UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELVIN LYNN CUNNINGHAM, Jr., CDCR No. F78919,<br><br>Plaintiff,<br><br>vs.<br><br>RAMOS, Alfonso, Correctional Officer; MORA, Jessica, Correctional Officer,<br><br>Defendants. | Case No.: 3:23-cv-00351-JAH-NLS<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 6]**<br><br>**(2) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b)** |

Plaintiff Melvin Lynn Cunningham, Jr. ("Plaintiff" or "Cunningham"), who is proceeding *pro se* and is currently housed at R.J. Donovan Correctional Facility ("RJD"), filed a civil rights action pursuant to 42 U.S.C. § 1983 on February 21, 2023. *See* Compl., ECF No. 1. Cunningham did not prepay the civil filing fee and did not file a Motion to Proceed in Forma Pauperis ("IFP"), and so the Court dismissed this case without prejudice and gave Cunningham forty-five (45) days to either pay the civil filing fee or file an IFP motion. *Id.* On June 14, 2023, Cunningham filed an IFP motion and on June 20, 2023, he filed a trust account statement. ECF Nos. 6–7.

/ / /

I.     **Motion to Proceed IFP**

In order to procced with a civil action in a district court of the United States, except an application for writ of habeas corpus, all parties must pay a filing fee of $402 or be granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).[1] *See* 28 U.S.C. § 1914(a). If a prisoner is granted leave to proceed IFP, however, he remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 577 U.S. 82, 84 (2016), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002). Accordingly, a prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). The Court reviews the certified trust account statement or equivalent and assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 577 U.S. at 84.

In support of his IFP Motion, Cunningham has submitted a copy of his CDCR Inmate Statement Report as well as a Prison Certificate completed by an accounting officer

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

at RJD. *See* ECF No. 7; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These statements show Cunningham has carried an average monthly balance of $28.35, an average monthly deposit of $16.66 over the 6-month period immediately preceding the filing of his Complaint, and had an available balance on the books of $0.00 at the time of filing. *See* ECF No. 3 at 4–6.

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 6), declines to exact the initial filing fee because his trust account statement indicates he may have "no means to pay it," *Bruce*, 577 U.S. at 85, and directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1) and forward them to the Clerk of the Court. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered").

## II. Screening Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)

A. <u>Standard of Review</u>

Because Cunningham is a prisoner and is proceeding IFP, the Court must conduct a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of

Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

B.      Factual Allegations

Cunningham uses hearing aids and wears an "ADA[2] vest" to identify himself as a disabled prisoner. Compl., ECF No. 1 at 3. On February 19, 2022, Cunningham alleges he was holding his ADA vest, his hearing aids, and a blue shirt while walking out of 13 Block to get his insulin. *Id.* Defendant Ramos yelled at Cunningham, telling him to put his blue shirt on. *Id.* Cunningham responded by telling Ramos to stop yelling at him, walked into the dayroom, then told Ramos "I don't care what you tell me just stop yelling at me, you're

---

[2] "ADA" refers to the Americans with Disabilities Act.

not regular in this block." *Id.* At this point, Ramos jumped up from his podium, yelled "I'm here right now," and walked over to Cunningham "in a very agitated state." *Id.* Ramos then "called a code," pushed his alarm, and began spraying Cunningham in the face with OC spray. *Id.* Cunningham states he had his hands "down in front of [me] holding one another" at the time Ramos sprayed him. *Id.* According to Cunningham, Defendant Mora saw the incident but lied on her report about what took place to cover up Ramos's misconduct. *Id.* at 6.

Cunningham ran away from the spray into his cell and tried to get water for his eyes and help from his cellmate. *Id.* at 3. He could not see because of the OC spray and could not hear because he had lost his hearing aids in the commotion. *Id.* He went into cell 135 and an inmate gave him milk and water to flush his eyes with. *Id.* at 3–4. He got down on one knee on the ground and began pouring the milk and water into his eyes when he felt another blast of OC spray. *Id.* at 4. He was eventually put into restraints and taken to a shower for decontamination. *Id.*

On April 19, 2022, Cunningham went to speak with program office officials to tell them he did not feel safe around Ramos. *Id.* At that point, he was cuffed up and taken to the gym and told he was going to the Administrative Segregation Unit ("ASU"). *Id.* Prison officials alleged he had made a death threat against Ramos. *Id.* Cunningham claims Ramos told prison officials Cunningham had made the threat in retaliation for Cunningham reporting Ramos for excessive force. *Id.* at 5.

C.  Discussion

   1.  Excessive Force – Defendant Ramos

Unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In the context of prison officials who are alleged to have used excessive physical force in violation of the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6–7; *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per

curiam) (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted). Cunningham alleges Ramos sprayed him with pepper spray without provocation and while he had his hands down in front of him. Compl., ECF No. 1 at 3. He also alleges Ramos said, "I'm here right now" after Cunningham told him "you're not a regular on this block" and came toward Cunningham "in a very agitated state" just before he sprayed Cunningham with the OC spray. *Id.* These facts plausibly allege Ramos used the OC spray on Cunningham "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. Accordingly, as currently pleaded, the Court finds Cunningham's Complaint alleges a plausible excessive force claim against Correctional Officer Ramos sufficient to survive the "low threshold" set for sua sponte screening as required by 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

### 2. Retaliation – Defendant Ramos

Cunningham also states a First Amendment retaliation against Ramos. "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison*, 668 F.3d at 1114 (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). The filing of a false disciplinary charge in retaliation for a grievance filed by an inmate is actionable under section 1983. *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004); *see also Perez v. Grey*, No. 2:21-cv-00095-LK, 2023 WL 2758341, at *11, (W.D. Wash. March 30, 2023); *Smith v. Petrey*, No. 1:19-cv-01169-SAB (PC), 202 WL 8881517, at *3 (E.D. Cal. Feb. 19, 2020) (a prisoner may allege a cognizable civil rights claim by alleging a false disciplinary report was filed in retaliation for exercising a constitutional right); *Moore v. Torres*, No. 1:18-cv-00601-LJO-(EGP) (PC), 2018 WL 5880789, at *4 (E.D. Cal. Nov. 8, 2018) (finding plaintiff sufficiently alleged a

retaliation claim where he claimed correctional officer filed a false report in retaliation for plaintiff filing a lawsuit). Cunningham alleges Ramos falsely accused him of threatening his life in retaliation for Cunningham filing a grievance against Ramos for using excessive force on him, which resulted in Cunningham being put in the ASU. Compl., ECF No. 1 at 5. This allegation is sufficient to allege a plausible retaliation claim against Correctional Officer Ramos sufficient to survive the "low threshold" set for sua sponte screening as required by 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

### 3. Defendant Mora

Cunningham's claims against Mora must be dismissed, however. Cunningham alleges Mora violated his Eighth and Fourteenth Amendment rights when she witnessed the incident with Ramos, then submitted a false incident report seeking to cover up Ramos's actions. Compl., ECF No. 1 at 6. "[A] prison guard has an affirmative duty to intervene on behalf of a prisoner if other officers are violating the prisoner's constitutional rights in his presence, or if he knows that the prisoner's rights are being violated," but only if the officer had an opportunity to intercede. *Tompkins v. Stephens*, No. CIV S-07-2346 GEB EFB P, 2011 WL 3875643, at *10 (E.D. Cal. Sept. 2, 2011) (citing *Robbins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) and *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). While Cunningham alleges Mora observed Ramos spraying him with OC spray, he has alleged no facts which show she was in a position to intervene. Cunningham states only that Mora "witnessed" the incident. Compl., ECF No. 1 at 6. These allegations are insufficient to plausibly allege Mora violated Cunningham's Eighth Amendment rights by failing to intervene to stop Ramos from spraying him with OC spray. *Iqbal*, 556 U.S. at 676–77.

Further, there is no constitutionally protected right to be free from false accusations or false reports by prison officials. *See Solomon v. Meyer*, No. 11cv02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014) ("[T]here is no due process right to be free from false disciplinary charges."); *Johnson v. Felker*, No. 12cv02719-GEB KJN P, 2013

WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim under § 1983."); No. 08cv3209-JSW (PR), 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), aff'd, 453 Fed. App'x 751 (9th Cir. 2011) ("As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983."). Therefore, Cunningham has not plausibly alleged a due process claim against Mora. *Iqbal*, 556 U.S. at 678.

### III.   Leave to Amend

While the Court has concluded Cunningham has plausibly stated an Eighth Amendment excessive force claim and a First Amendment retaliation against Ramos, it has dismissed Cunningham's claims against Defendant Mora for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Because Cunningham is proceeding pro se, however, he must be given leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### IV.   Conclusion and Order

Based on the foregoing, the Court:

1)   **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 6).

2)   **DIRECTS** the Secretary of the CDCR, or their designee, to collect from Plaintiff's trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in Plaintiff's account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER

ASSIGNED TO THIS ACTION.

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001.

4) **DISMISSES** Plaintiff's claims against Defendant Mora sua sponte for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

6) **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) file a Notice of Intent to Proceed with his First and Eighth Amendment claims against Ramos only; or (2) file an Amended Complaint correcting all the deficiencies of pleading identified by the Court in this Order.

If Plaintiff chooses to proceed with his First and Eighth Amendment claims against Defendant Ramos only, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendant Ramos.

If Plaintiff chooses to file an amended pleading correcting the deficiencies outlined in this Order, *his Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived.* See S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled."). Plaintiff's Amended Complaint must be entitled as his "First Amended Complaint," contain S.D. Cal. Civil Case No. 22-cv-01801-BAS-WVG in its caption, and comply both with Fed. R. Civ. P. 8 and with S.D. Cal. CivLR 8.2.a.

/ / /
/ / /
/ / /
/ / /
/ / /

In order to assist Plaintiff in complying with these requirements, the Court further **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for his use and convenience should he choose to amend.

**IT IS SO ORDERED.**

Dated: August 7, 2023

Hon. John A. Houston
United States District Judge